A91A0087. In the Interest of G. T. T., a child.
A91A0088. In the Interest of T. T. T., a child.
(405 SE2d 750)

Cooper, Judge.

Appellant appeals the termination of her parental rights to G. T. T., a boy born on November 16, 1988 (Case No. A91A0087), and T. T. T., a girl born on September 17, 1989 (Case No. A91A0088). The father of the children surrendered his parental rights and is not a party to this appeal.

The Bleckley County Department of Family & Children Services ("DFCS") was awarded temporary legal custody of G. T. T. after the juvenile court determined that the child was deprived and his parents were unfit to retain custody. At the age of two months, G. T. T. had been taken to the emergency room by appellant because of swelling in his right thigh. An examination revealed that within three days of his admission to the hospital, the child had suffered a spiral fracture of his right femur resulting from the twisting of the leg such that it completely severed the bone. The child had also sustained two-week-old fractures of the tibia and fibula of the right leg and a lateral skull fracture which ran from above the right ear around the back of the skull. The court was unpersuaded by the parents' explanations that a babysitter was responsible for the injuries, that the father might have rolled over the child in his sleep or that the child's head might have been bumped while the father was walking with him to obtain a night feeding. The child had been hospitalized earlier for treatment of a scalded throat caused by appellant feeding him milk which was excessively heated in the microwave. In the order awarding temporary custody to DFCS, the court held that G. T. T. was the victim of child abuse and that the parents, even if not responsible for the injuries, were "grossly negligent in permitting such injuries to occur, and that the child [was] without proper parental care or control necessary for his physical health. . . ." The court also noted that the father suffered from schizophrenia, which inhibited him from asserting himself in the protection and care of the child; that appellant's older child was adopted by appellant's mother because of neglect; that the couple had an unstable marriage; and each had unstable employment histories.

Because of the treatment of G. T. T., DFCS placed a homemaker with appellant and the father at T. T. T.'s birth to provide assistance to the parents and to monitor the child's condition on a daily basis. When T. T. T. was one month old, the homemaker discovered a bruise on the child's upper right chest, and the child was placed in immediate custody. Appellant contended the bruise appeared while she was at work; however, neither parent offered an explanation for the cause of the bruise. After a detention hearing, T. T. T. was re-

turned to appellant, and appellant was required to attend various counseling sessions and to cooperate with DFCS. The father was restricted from further contact with appellant and the child. Within a month, the parents were indicted for cruelty to children for the injuries sustained by G. T. T. Unable to make bond, appellant remained in jail for four months before entering a guilty plea and being sentenced by the court to probation. DFCS obtained temporary legal custody of T. T. T. while appellant was in jail upon the court's determination that she was a deprived child. Based, in part, on a condition of appellant's probation that for five years she have only supervised visits with the children, DFCS petitioned the court for the termination of appellant's parental rights to both children.

At the hearing on the termination petitions, in addition to testifying regarding the injuries to the children and the neglect of appellant's first child, a representative from DFCS explained that the practical effect of the restriction on appellant's contact with the children was that she would have only one supervised visit per month with them due to the limitations of DFCS. Upon her release from jail, having no residence of her own, appellant moved in with a friend. Two weeks later she got a job at Dairy Queen which she kept for only one day because of a second arrest for writing bad checks. Appellant's probation was revoked, and her new sentence continued the restriction on contact with the children but also required confinement in a diversion center until a $1,000 fine and fees were paid in full. The sentences entered on appellant's guilty pleas to 25 counts of writing bad checks required the payment of additional fines and fees in the diversion center.

1. Appellant contends the evidence adduced below did not warrant termination of her parental rights given the permanence of severance of the parent-child relationship and appellant's desire to resolve her legal difficulties and establish a stable home life for the children.

The trial court noted in its findings that reasonable efforts were made to prevent the need for terminating appellant's rights and that allowing the children to remain with appellant would be contrary to their best interests. The record demonstrates that appellant failed to attend counseling sessions scheduled after G. T. T. was removed from her custody; that appellant never maintained a consistent work history or a healthy and independent household for any considerable length of time; and that at least on one occasion after T. T. T. was returned to appellant and while receiving the counsel of a homemaker placed in her home on a daily basis by DFCS, appellant left the child for at least 45 minutes with a male friend who had no knowledge about the care of a two-month-old baby. " '(T)he appropriate standard of appellate review in a case of this sort is whether after review-

ing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody were lost. . . . The factfinding and weighing of evidence is to be done in the trial court under the clear and convincing evidence test. The reviewing court is to defer to the lower court in the area of factfinding and should affirm unless the appellate standard of review, here the rational factfinder test . . ., is not met. . . .' [Cits.]" *In the Interest of J. L. G.*, 191 Ga. App. 904, 905 (1) (383 SE2d 376) (1989). Applying the test to the evidence presented to the trial court, including all prior orders and findings of fact previously made in the juvenile court relative to G. T. T. and T. T. T., we find that there was clear and convincing evidence from which a rational factfinder could have found parental misconduct or inability and that termination was in the best interest of the children as provided by OCGA § 15-11-81. " ' "In a case such as this, a plea of (additional time) to improve is without force to overcome the proof of unrelieved detriment already suffered by the [children] . . . where there is no indication but the promise to suggest hope of improvement." [Cit.]' [Cits.]" *In the Interest of C. M.*, 194 Ga. App. 503, 504 (1) (391 SE2d 26) (1990).

2. Appellant's second enumeration of error that the trial court's orders failed to contain specific findings in accordance with OCGA § 15-11-81 (b) (4) is without merit. To the contrary, in both orders the trial court determined that appellant's conviction of a felony and imprisonment had "a demonstrable negative effect on the quality of the parent-child relationship"; that there was egregious conduct by appellant toward G. T. T. which was "of a physically and emotionally cruel and abusive nature"; that G. T. T.'s injuries constituted substantial evidence that they resulted from parental neglect or abuse; that "there was evidence of past physical, mental, and emotional neglect" of appellant's first child; and that the injury to T. T. T., while occurring when the child was left in the father's care, was attributable to appellant's "inability to provide proper parental care or control necessary for the physical health and well being" of T. T. T. The court incorporated its earlier findings that the children were deprived as defined by OCGA § 15-11-2 and concluded that "continuation in the home would be contrary to the welfare" of both children. In our view, the trial court's findings were sufficiently explicit to support termination. Compare *McCary v. Dept. of Human Resources*, 151 Ga. App. 181 (2) (259 SE2d 181) (1979).

*Judgments affirmed. Birdsong, P. J., and Pope, J., concur.*

DECIDED MAY 15, 1991.

*W. Dennis Mullis*, for appellant.

*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Margot M. Cairnes, Harrison, Harrison & Llop, Steven M. Harrison, Special Assistant Attorney General*, for appellee.